My name is Aaron Ford. I am the pro bono counsel for appellant James El Trujillo. I would like to reserve three minutes for rebuttal, please. Pardon me, two minutes for rebuttal. Your honors, we believe this panel should reverse and remand this case to district court. Stated succinctly, the district court erred in adopting the magistrate judge's report and recommendation, which suggested that summary judgment should issue in favor of the appellees on the issue of qualified immunity. Here are the pertinent facts shown from the evidence probably construed. The Washoe County Sheriff's Department was holding Mr. Trujillo on charges of child molestation. Based on his charge, Mr. Trujillo was designated as a protective custody inmate. The deputy sheriffs knew of Mr. Trujillo's designation. The county's policy required protective custody inmates, such as Mr. Trujillo, to be separated from other inmates whenever possible. Notwithstanding that policy, Trujillo was placed in an arraignment room with general population and three high-risk inmates. Mr. Trujillo was dressed in blue. The high-risk inmates were dressed in red. There was no confusion there. One of the high-risk inmates, Mr. King, had a violent history of assaulting other inmates. Mr. King was insufficiently restrained and shackled at the time. Mr. King attacked Mr. Trujillo. Mr. King likely had- Why was he placed in a room? It seemed to me that it was in the ordinary course of processing him as a prisoner that he was placed in that room, pending some procedure that was about to happen. Is that right? My understanding, Your Honor, is that he was in the arraignment room en route to go to court. Yeah, in other words, so they didn't go take him out of a cell and stick him in some other cell. This was the regular processing of your client in the manner in which those things happen in the arraignment process. That policy is the policy that the appellees are attempting to have this court, as well as the district court, adopt or accept. But there was another policy, the whenever possible policy. And we know that that policy could have been followed because immediately after the attack, which is undisputed in this instance, they removed him to another room. See, the problem is I'm looking for evidence of deliberate indifference. And you know exactly what that means. And we've got a lot of these cases that say negligence, failure to follow policy, doing stupid things. None of that counts. You've got to show evidence of deliberate indifference. And that's a pretty high standard. What's the evidence of deliberate indifference here? The evidence, Your Honor, I think can be found in three key facts, one of which is the whenever possible policy. Knowing that that policy, although they are OK, they violated the policy. OK, so that's one key fact. Another key fact is that these deputies knew that Mr. Trujillo was subject to additional, more prone to attacks than others because of the fact that he was an individual who was alleged at the time, who was a pre-trial detainee, who incidentally gets if not more protection than a convicted prisoner gets in that context. They knew that he was more susceptible to being attacked. Thirdly, they could have, in fact, followed their policy. Fourth, I'm sorry, I said there were three facts, but there's a fourth fact. That fourth fact is the fact that Mr. Trujillo has alleged that he heard them whispering later about him being a child molester after the attack. When you construe those types of facts as the district court was supposed to in this instance in his favor, then you have to, then a reasonable jury could find that, hmm, these deputies were whispering about him being a child molester. They knew he was supposed to be separated. They didn't separate him. They could have separated him. They let him, they were deliberately different to the fact that he could be placed in a high risk. Mind you, the- Of course, with, I mean, it's a very tricky thing, as you know, for any of the prisoners who were singled out and identified with sex crimes, particularly child crimes, but the whispering came after. And my concern is if we adopted your position, would we have to in effect say that anytime you're processing prisoners through for a court proceeding, it would be unconstitutional to have them protective custody prisoners at any time in the same room as other prisoners. Would that be the constitutional ruling? No, ma'am, I think not. I think the whenever possible policy can be applied as is appropriate. And if it- How would I know then whether there was deliberate indifference as opposed to negligence? If the court were trying to figure out the next case based on your, the way we would write it up according to your rationale. Yes, ma'am. It seems to me that it is a very important key fact that cannot be misrepresented, that the allegation was there that these guards were whispering that. So to the extent that factual distinction exists in another case going forward, it seems to me that that would be a factual distinction that would disallow the application of a constitutional rule that these individuals must always be segregated apart, even notwithstanding the ruling that this court can make, which is to allow it to go back to the district court, to allow an actual trial of fact, look at those facts and ascertain whether or not Mr. Trujillo is accurate. He says he heard it. They say he didn't. You know, that's an issue of fact. That's a quintessential example of an issue of fact. Can you explain? I guess I don't understand the importance of the post-attack whispering. And even though that shows that the officers knew that he was there for child molestation, how does that arise to knowledge that they were exposing him to a substantial risk of harm? Wouldn't it be if the other prisoners or if there was some evidence that Mr. King knew that, or if there was something that would draw the line? I understood that Mr. King was there because of a mental health issue. So I'm having trouble drawing the line between Mr. King being there and Mr. Trujillo being there and why that's deliberate indifference. Yes, Your Honor, a couple of things here. First of which, Mr. Trujillo was certainly known by everyone else in the jailhouse to be a person who was alleged to have some form of crime that required protective custody. Well, because he was dressed in the blue. In baby blue, exactly. Yeah, I mean, there were other prisoners there as well in blue, right? Yes, yes, yes, ma'am. I imagine so. I can't speak to that factually. I don't know if there was anyone else in blue there. But that's not just for sex crimes. I mean, that's for a whole range of different issues that they might be in protective custody. Which is entirely accurate, Your Honor. Part of the reason why the policy is inactive, though, and if you read the policy itself, it says it's to prevent the risk of harm to these individuals. It's expressly, and it doesn't say severe risk, obviously, because that would place it entirely within the constitutional realm we're talking about. But the policy itself speaks to the risk that it is intended to protect or prevent on behalf, as against these particular individuals. And so, to the extent Mr. King, who was dressed in red, and we now know that, we now are told that it was because of a mental health issue, he also had a violent past. And they try to chalk it up below to provocation. Yet again, another issue for the trial fact to determine. They should be able to weigh whether or not Mr. King actually had the violent past, or. One of the questions I have, when you look at the video, which is with stunning response by the law enforcement officers. Three to five seconds, Your Honor. And you look at it, I don't know what the seconds are, but it is so fast that they're after him. I mean, they basically have complete control of the room. Does that factor in here, as deliberate indifference, if they have an environment in which they can then respond that quickly? Does that fact, something we should look at? Yeah, that's an interesting question, Your Honor. And possibly so. But then again, the issue is the risk of harm that you place someone in. Not the immediate reaction they're after. Similarly, it's not the level of injury that Mr. Trujillo ultimately suffered. So we don't necessarily have to look at how fast these individuals reacted. What we have heard is that officers themselves thought that some people were just laying back and relaxing, putting their feet up on the chairs, which seemed to indicate that the environment was lax. Now, their response period, notwithstanding, the fact is everyone assumed that the environment was lax. Did you want to save time for rebuttal? I did. Thank you. In police court, Herbert Kaplan, Washoe County Deputy District Attorney on behalf of the appellees. There are a couple issues that I wanted to address with the court. First, the deliberate indifference issue is a huge issue in light of what the court has already inquired about. The response time of the deputies, the environment in which these specific individuals were brought into was a very controlled environment. For deliberate indifference, there's got to be a finding that there was a known risk, a substantial risk of serious harm. Mr. Trujillo alleges that there were nine deputy sheriffs in that room. It's not a huge room. The court can see that on the video. There was a good amount of control. Any risk of harm that existed was not substantial. And in terms of the response time, it is indicative of the risk of serious harm. So I think that both of those aspects of the deliberate indifference inquiry are in favor of the deputy sheriffs. The other issue that I wanted to touch on, there are a number of issues that were raised in the briefs that raised the question on if inference is being improperly applied. First of all, the issue of the comments after the fact, again, I agree with the court. I have a problem with the after the fact comments as to what relevance they have as to the deliberate indifference inquiry. We haven't made any decision on that. We just had a question about that. I understand that. But in reality, whatever comments may have been made are irrelevant to that inquiry. And not to mention the fact that while Mr. Trujillo did raise that issue in his complaint, all of the deputy sheriffs in their motion for summary judgment provided affidavits that indicated that they did not make any such comments. That's a credibility issue that's ordinarily not determined in summary judgment. Well, I disagree with that because- Trujillo says they said it. Not in his opposition. It was never posed and rule 56 is quite clear. This is late to the gate. That issue I think is precluded at this point. It was never presented in Mr. Trujillo's opposition. He never said, no, they're lying, I heard it. And he never raised that in his opposition motion for summary judgment. So I believe that that is precluded under rule 56. It was the first time he raised it. He raised that issue in his complaint. And the deputy sheriffs in their motion for summary judgment addressed that issue. And I believe that that's why the district court addressed the issue. But regardless of whether the statements were made or not, it's irrelevant to the deliberate indifference inquiry. Going back to that inquiry, I think Mr. Trujillo is addressing or attacking this in two different ways. First of all, it's the specific as to Mr. King. In terms of the specific risk that Mr. King would have posed to Mr. Trujillo, there is no evidence that Mr. King presented any threat at that time. There's no evidence that Mr. King even knew Mr. Trujillo. There's no evidence aside from the fact that Mr. Trujillo was dressed in the light blue that Mr. King knew anything whatsoever about Mr. Trujillo. Some evidence that Mr. King had attacked someone earlier, I believe, in a comparable context. Isn't that right? Well, I would disagree that it was in a comparable context. It occurred in the same room that this incident occurred in. Mr. King was the aggressor in that situation, but the other individual was not dressed in baby blue. The other individual was just another inmate. And I don't believe that that individual was shackled at the time, but I could be mistaken on that. It was a different atmosphere. The individuals in that room were not under the same control that these individuals were under with the number of deputies that were present at the time, the fact that they were shackled at the time, the fact that the deputies were controlling the atmosphere is important. Was there or were there policy violations on the part of your clients in this case? That's questionable as well. I agree that there's a policy that says that protective custody inmates are to be kept separate whenever possible, but the whenever possible does leave the door open as to eliminating the possibility that protective custody inmates and other inmates can never be in the same room at the same time. But it was possible to keep them separate in this context, in the free arraignment context, wasn't it? Well, I think anything is possible. They could have brought each individual inmate directly from their cell to whatever means of transportation they were using to bring those individuals to the court, but is that realistic? That's an issue of policy that the policymakers at the jail are afforded deference in coming to the conclusion that with the number of deputies, with the shackling of the inmates, with the oversight of the deputies, that this is a safe environment or reasonably safe environment for the inmates. So does the record have anything in it with respect to whether there's been any change in practice as a consequence of this lawsuit? No. So in terms of Mr. King's specific threat to Mr. Trujillo, there's really no evidence aside from the fact that there was another altercation in that room, but under different circumstances, there's no indication that Mr. King had anything against Mr. Trujillo. Again, there's no indication. In fact, the indication in the record by Mr. Trujillo's own statement is, I never met this guy before. So there's no indication whatsoever that there was any threat posed specifically by Mr. King to Mr. Trujillo at that point. The circumstances, the incident occurred, I believe it was September 16th. This incident in question here occurred on October 19th. There was a one-month period that the circumstances changed somewhat as to Mr. King's position. Clearly, he was in the mental health segregation at the time of this incident. So the concerns that would have been raised were not necessarily for aggressiveness towards Mr. Trujillo or anyone else. The concerns that would have been raised were more for concern that Mr. King was going to harm himself. And moving on to the other aspect, there's a general, there's a tack on the general policy of ever having a protective custody inmate in the same room as other inmates. And I think I've addressed those concerns already, but those seem to be the two avenues that Mr. Trujillo is pursuing to claim that the district court was wrong in granting summary judgment. I do want to touch on the inference issue. The law does require that the court can draw reasonable inferences. And in fact, this court just a few months ago at least recognized that there were restrictions on that, on the drawing of inferences in Lakeside, Scott versus Multnomah County. The court recognized that a reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence. And also citing another in Eighth Circuit case in which it noted that an inference is reasonable quote, when it may be drawn from the evidence without resort to speculation, end quote. I think what Mr. Trujillo is attempting to do is to say that I don't even want to call them inferences. I want to call them whatever he wants the conclusion to be to be drawn from a specific act. First of all, again, the fact that someone may have mentioned the fact that he was a child molester after the incident occurred was not opposed. It was supported only by a conclusory statement contained in the complaint, not in the summary judgment arena. So that's eliminated altogether. Thank you, your time has expired. Thank you. I think you have about a minute and a half for rebuttal. Thank you. There were about six topics that I heard come up here. Again, thank you for the opportunity to have my first oral argument before the Ninth Circuit. One of the questions related to the response time and how that speaks to deliberate indifference. Your Honor, I don't think the response time speaks to the risk that Mr. Trujillo was placed in in the first instance. Certainly it speaks to the response, but there's also unrefuted testimony by their own officers that these individuals were not necessarily taking care of their business appropriately immediately prior to the attack. So the response time doesn't speak to the risk that he was initially placed in in person. Speaking to the after the fact comments, mind you, these weren't just comments. Mr. Trujillo says they were giggling about it. So, I mean. Let me ask you a question about that. I just read the red brief again because it wasn't clear to me the position of the other side was that these weren't properly considered in summary judgment. We're now hearing that these allegations by your client appeared in the complaint, but never into any of the moving papers that would relate to the summary judgment motion. Can you eliminate us on that? Yes, Your Honor. I don't believe that is accurate, quite frankly. I was in the trial counsel below. Mr. Trujillo was pro se. And I do believe that he raised these issues ad nauseam about the different types of comments that were being made throughout the moving papers. The fact that they had to mention it in their summary judgment means that, in fact, it was alleged and pled beyond the complaint because the summary judgment was after some discovery had taken place. So, in any, in addition, Your Honor, this Court has stated, I'm running out of time, this Court has stated that the evidence itself, not the form, is what matters when we're talking about trying to go back and look at the possibility of reversing a summary judgment. And so the fact that he said it himself is sufficient to allow this to go back to have that looked into. As regards the specific threat that Mr. King had toward him, that's not required, Your Honor. Neither Farmer nor Heisler required that there be a specific threat toward a particular individual. Hence, the reason why we have a whenever possible policy as regards individuals in blue versus individuals in red. And finally, the inferences that we speak about. The only court that, the case that I was able to find in the Ninth Circuit that deals with this accomplished situation involving videotapes was the Blakenhorn case. Blakenhorn case. And that says specifically that even from video inferences, video case, you have to draw inferences in the light most favorable to the non-moving party in this instance, which would have been Mr. Trujillo. Unless the Court has any other questions, I will have my seat. Thank you. I'd like to, the case of Trujillo versus Washoe is submitted. I'd also like to thank you, Dr. Ford, for your pro bono appearance in the Court's pro bono program. It's, I think, probably the Deputy Attorney General would also agree. It's better to be able to respond to a well-written and rational brief and with all the legal underpinnings. So we appreciate that. And it's also useful to the Court. Thank you both. Thank you.
judges: Trott, McKeown, Ikuta